**ORIGINAL**

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2005 JUL 22 AM 10: 10

CLERK OF COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RICHARD FRAME and WENDELL DECKER, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| THE CITY OF ARLINGTON, A Municipal Corporation, | § § § | **4-05CV-470-Y** |
| Defendants. | § § | |

## COMPLAINT

Plaintiffs, RICHARD FRAME and WENDELL DECKER (collectively, the "Plaintiffs"), sue Defendant, CITY OF ARLINGTON, and allege:

1.     On July 12, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., establishing the most important civil rights law for people with disabilities in our country's history. Congress explicitly stated that among the purposes of the ADA are:

A.     "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities,"

B.     "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," and

C.     "to provide the sweep of congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order

to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b).

2. In passing the ADA, Congress identified some 43,000,000 Americans as having one or more disabilities. 42 U.S.C. § 12101(a)(1). Congress found that, historically, society tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem. 42 U.S.C. § 12101 (a)(2).

3. Congress also found that discrimination against individuals with disabilities persists in such critical areas as housing, institutionalization, and access to public services. 42 U.S.C. § 12101 (a)(3).

4. The ADA has a clear and comprehensive nationals mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 12101 (b)(1)(2).

5. To further ensure a comprehensive and uniform federal law, the ADA preempts state and local laws unless those laws provide protection for the rights of individuals with disabilities which is greater than, or equal to, the protection afforded by the ADA. 42 U.S.C. § 12131-12134; 28 C.F.R. Part 35 § 35.101 et seq.

6. The City of Arlington ("Arlington") has discriminated against the Plaintiffs by failing to properly install or maintain curb ramps where sidewalks intersect with vehicular ways, when resurfacing, repairing, and/or altering city streets and/or sidewalks in violation of the ADA. Certain intersections in Arlington either have no curb

ramps whatsoever, or contain noncompliant curb ramps that constitute a hazard when persons with mobility impairments attempt to travel between sidewalks and streets.

7.      Arlington has also discriminated against the Plaintiffs by failing to maintain accessible pedestrian rights-of-way as required by the ADA.  For example, many sidewalks contain abrupt vertical changes in level violations, excessive cross slopes, and/or protruding objects which make travel dangerous if not impossible for the mobility impaired.  This failure prohibits people with mobility impairments from being able to travel safely and independently along such pedestrian rights-of-way within Arlington.

8.      Arlington has also discriminated against the Plaintiffs by failing to provide a sufficient number of handicap parking spaces or fully compliant handicap parking spaces in certain public facilities described *infra*.

9.      The Plaintiffs in this action challenge Arlington's failure to properly design and install curb ramps when constructing, resurfacing, or altering city streets and sidewalks, as well as Arlington's failure to provide program access to pedestrian rights-of-way.  These actions are in violation of the ADA, and Section 504 of the Rehabilitation Act of 1973, which require public entities and entities receiving federal funds to provide equal access to public services for the disabled.

10.     The Plaintiffs in this action also challenge Arlington's failure to maintain accessible routes along the City's pedestrian rights-of-way in violation of the ADA, and Section 504 of the Rehabilitation Act of 1973, which require public entities and entities receiving federal funds to provide equal access to public services for the disabled.

11. Plaintiffs include individuals with mobility impairments who require the use of a wheelchair or motorized scooter to travel along pedestrian rights-of-way. Such use requires complaint curb ramps so Plaintiffs can use the pedestrian rights-of-way to travel to and from their desired destinations of travel without being required to travel in streets often against oncoming traffic, and/or traverse over hazardous and unsafe curb ramps. In order to have the safe and navigable use of sidewalks in Arlington, Plaintiffs also require properly maintained pedestrian rights-of-way that are free from abrupt vertical changes in level of over ¼ inch (1/2 inch if the change in level is beveled). Plaintiffs also require the removal of dangerous and excessive cross slopes, and obstacles or protruding objects that narrow and prohibit the path of travel.

12. This action also challenges Arlington failure to provide proper curb ramps at all streets and roadways under the control and responsibility of Arlington including but not limited to, city owned streets and county and/or state roadways within Arlington for which Arlington has maintenance responsibilities.

13. The action also challenges Arlington's failure to properly maintain pedestrian rights-of-way under the responsibility and control of Arlington, including but not limited to sidewalks and crosswalks serving city owned streets and county and/or state roadways with Arlington for which Arlington has maintenance responsibilities.

## JURISDICTION AND VENUE

14. This action is brought by the Plaintiffs to enforce Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 CFR Part 35, as well as §504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq. ("the Rehabilitation Act").

15. This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), as the events complained of occurred within this district and division.

## THE PARTIES

17. Arlington in a Texas municipal corporation which has been given the authority to install, repair, and maintain streets and sidewalks within Arlington, including the installation, repair and maintenance of curb ramps. Arlington is a public entity within the meaning of Title II of the ADA, which is defined as any state or local government or any department or agency of a state or local government. 42 U.S.C. §12131(1)(a) &(b).

18. Plaintiff Richard Frame ("Mr. Frame") resides at 6209 Arrowwood Drive in Arlington, Texas, and travels within Arlington to conduct business and/or other routine daily activities as further described *infra*. Mr. Frame is a quadriplegic and requires the use of a motorized wheelchair to navigate within Arlington. Mr. Frame is an individual with a disability under the ADA.

19. Plaintiff Wendell Decker ("Mr. Decker") resides at 1312 Redbud Drive in Arlington, Texas and travels within Arlington to conduct business and/or other routine daily activities as described *infra*. Mr. Decker has diabetic neuropathy and is required by prescription to limit his driving time and walking distance. Mr. Decker requires the use of a motorized wheelchair to navigate within Arlington. Mr. Decker is an individual with a disability under the ADA.

## FACTS COMMON TO ALL COUNTS

20.    Mr. Frame is unable to travel safely on Arlington's sidewalks and streets without curb ramps or properly installed curb ramps because he uses a motorized wheelchair. Mr. Frame is also unable to travel safely on Arlington's pedestrian rights-of-way because many sidewalks are not properly maintained, contain abrupt vertical changes in level violation, excessive cross slopes, and/or contain obstructions from protruding objects. Curbs and poorly maintained sidewalks are major obstacles to persons who use wheelchairs. The front wheels are sensitive to obstacles, and any noncompliant change in level, crack or slope can impede the progress of a wheelchair, damage a wheelchair, or increase the possibility of overturning a wheelchair and seriously injuring its passenger.

21.    The Plaintiffs have traveled on and will continue to travel on the pedestrian rights-of-way within Arlington which either contain no curb ramps or unsafe curb ramps due to improper design, installation, construction, and/or maintenance and sidewalks which contain abrupt vertical changes in level violations, excessive cross slopes, and/or protruding objects which make travel dangerous if not impossible for the mobility impaired.

22.    The Plaintiffs live in Arlington and frequently travel within Arlington to conduct business and other routine daily activities. They are frequently denied the full and equal use and enjoyment of Arlington's pedestrian rights-of-way while conducting daily activities. Their ability to live within their home community is negatively impacted by the inaccessible sidewalks, lack of curb ramps and/or noncompliant curb ramps, which include streets and sidewalks primarily in close proximity to his home and beyond. As a

result, they are forced to engage in difficult and/or risky dangerous travel in order to reach certain destinations. The difficulty lies in the fact that they often must take longer routes to avoid access barriers that non-disabled persons can easily overcome. The danger lies in the fact that they are often forced from sidewalks onto busy streets where he must negotiate through vehicular traffic. Once in the street, they are often inhibited from regaining access to sidewalks due to intersections with no curb ramps and/or noncompliant curb ramps that are either too steep and/or contain excessive vertical changes in level violations at their transition base.

23. Several important destinations for Mr. Frame include, but are not limited to, the Medical Center of Arlington, Arlington Memorial Hospital, and the downtown area of the City of Arlington. When Mr. Frame travels to these destinations he is driven by his caretaker in a van. On several occasions Mr. Frame had a test performed at these hospitals and was instructed to come back in approximately two hours. Because it is difficult to find van accessible parking at businesses in the surrounding areas, Mr. Frame has left his van parked in the hospital parking lot and attempted to travel on the surrounding public rights-of-way areas in his motorized wheelchair. However, regardless of which medical district Mr. Frame has traveled in, he encounters numerous access barriers on the surrounding public rights-of-way areas.

24. For example, while waiting for test results and additional testing at Medical Center of Arlington, Mr. Frame has attempted to travel to nearby medical supply stores, restaurants such as Café Pulidos, a barbershop for a haircut, Vandergriff Park, and Central Imaging of Arlington. In order to reach these destinations, Mr. Frame has attempted to travel on the sidewalks adjacent to Omega, Mayfield, and Matlock Road.

**Complaint** **Page 7**
H:\FILES\4500\45630001\PLEADINGS\Complaint.doc

However, the sidewalk adjacent to Mayfield between Matlock Road and Hospital Drive has several cracks and major indentations reducing the sidewalk to 25 and 31 inches prohibiting the path of travel for a wheelchair user. There are also several abrupt vertical changes in level that are at least 1 ½ inches and several excessive cross slopes ranging between 5.1 and 6.5%. Continuing further, the curb ramp at Hospital Drive and Mayfield has an excessive running slope of 11.3%. The curb ramp on the northeast corner of Mayfield and Matlock Road has an excessive 17% running slope.

25. Another option of travel for Mr. Frame would be the sidewalk adjacent to Matlock Road. However, when Mr. Frame has attempted to travel on the Matlock Road sidewalk, he has fared no better. Several cross slopes ranging between 6.1 and 9.5% exist near the main handicap entrance where the sidewalk intersects with driveways. The curb ramp at Omega and Matlock Road next to the Vandergriff Park entrance has an excessive 15.9% running slope and 7.7% cross slope, along with a utility pole obstruction prohibiting the path of travel for a wheelchair user. Further along the Matlock Road sidewalk in front of Vandergriff Park, the sidewalk has many areas containing excessive cross slopes ranging between 4.1 to 5.4%. Finally, the curb ramp in front of the Texas Department of Human Services has an excessive 21% running slope, an excessive vertical change in level of 2 inches at its transition base, along with another obstruction prohibiting the path of travel for a wheelchair user. On information and belief, several other sidewalks and curb ramps within close proximity to the above described areas also have similar access violations.

26. The Arlington Memorial Hospital district has been another important destination for Mr. Frame. While awaiting test results at Arlington Memorial Hospital,

**Complaint**                                                                                     **Page 8**
H:\FILES\4500\45630001\PLEADINGS\Complaint.doc

Mr. Frame has attempted to navigate the surrounding public rights-of way areas located on Randol Mill Road. When attempting to reach another Central Imaging of Texas location on Randol Mill Road, Mr. Frame encountered many of the same types of access violations as described *supra.*

27. The public sidewalks on both sides of Randol Mill Road have many intersections with either noncompliant curb ramps or no curb ramps at all. The sidewalks also contain numerous obstructions prohibiting the path of travel for wheelchair users, including tree stumps and brand new utility poles. On information and belief, several other sidewalks and curb ramps within close proximity to the above described areas also have similar access violations.

28. The Arlington Memorial Hospital district and Randol Mill Road is also an important destination for Mr. Decker. Mr. Decker often travels to the 7-11 store located on Randol Mill Road and must also travel to Arlington Memorial Hospital three times a week for cardiac rehabilitation exercises. Quite often, there are no available handicap parking spaces. In addition, driving is something that has become increasingly difficult and will continue to worsen for Mr. Decker over time. Mr. Decker lives within one (1) mile of the hospital and would like to have the full benefit and use and enjoyment of Arlington's public rights-of-way to access Randol Mill Road in order to reach Arlington Memorial Hospital. However, due to the access violations described *supra,* Decker is prohibited from traversing the sidewalk on either side and must engage in risky street travel to reach his destination.

29. Another important destination for Mr. Frame is the downtown Arlington area where he would like to have the full benefit and use and enjoyment of

Arlington's public rights-of-way to access streets such as Border Street, South Street, and Abram Street in order to conduct personal and/or business activities including accessing the U.S. Post Office, the Municipal and Sub Courthouses, his attorney's office, and restaurants including J. Gilligan's.

30.    Mr. Frame has attempted to travel on Border Street ("Border"), South Street ("South"), and Abram Street ("Abram"). However, in each of these locations he is confronted with numerous access barriers as discussed *supra*. Those locations and access barriers include, but are not limited to, the following:

A.    The sidewalk on Abram directly in front of City Hall has a cross slope of 3.7%. The sidewalks on the south side of Abram between West and College, East and Elm, and Lampe and Cooper are non contiguous.

B.    The northwest corner of Abram and Mesquite has a noncompliant curb ramp with an abrupt vertical change in level at its transition base in one direction and no curb ramp in the other direction.

C.    The southwest corner of Abram and Center has a noncompliant curb ramp with an excessive running slope and the sidewalk just beyond the curb ramp has an excessive cross slope.

D.    The northwest corner of Abram and Oak has a noncompliant curb ramp with an excessive running slope and the sidewalk just beyond the curb ramp has an excessive cross slope.

E.    The southwest and southeast corners of Abram and West have noncompliant curb ramps and non contiguous sidewalks.

F.   The southeast corner of Abram and Elm has a noncompliant curb ramp with an excessive running slope and a non contiguous sidewalk just beyond the curb ramp.

G.   The southwest corner of Abram and East has a non contiguous sidewalk and no curb ramp at all.

H.   The sidewalks near the northeast and southeast corners of South and West have extended and excessive cross slopes ranging between 5.6% and 7%.

I.   The northwest corner of South and Mesquite has a utility pole obstruction prohibiting the path of travel for wheelchair users, while the northeast corner has a non contiguous sidewalk in one direction beyond the curb ramp.   The sidewalk beyond the northwest corner is also noncompliant.

J.   The sidewalks on the south side of South and Mary and the south side of South and Elm in front of the post office are non contiguous, while the north side of South and Mary has no curb ramps at all.

K.   The sidewalk on the south side of Border in front of the Sub Courthouse and beyond is non contiguous and contains noncompliant curb ramps projecting wheelchair users into vehicular lanes.   The sidewalk on the north side of Border directly across from the Sub Courthouse is also non contiguous.

L.     The southeast corner of Border and Mary has no curb ramp, while the northwest corner of Border and Mary has a non contiguous sidewalk beyond the curb ramp.

M.     The sidewalk on the south side of Border near Mesquite and between Mary and East and is non contiguous and also contains no curb ramps in an area of the sidewalk between Mesquite and Elm.

N.     The northeast corner of Border and Elm by the rear of the post office has no curb ramp at all.  Just beyond the northeast corner where a curb ramp should exist, the sidewalk also has an abrupt vertical change in level of at least 2 inches and an excessive cross slope of 6.1%.

O.     Mr. Frame has also become aware of other access barriers while attempting to access South Pecan Street near Mission Arlington.  On information and belief, this area also contains numerous access barriers as described *supra*.

P.     The Sub Courthouse located on Border contains two (2) handicap accessible parking spaces with excessive running slopes or cross slopes.

31.     Another destination for Mr. Frame includes the area around Matlock and Cravens.  Mr. Frame would like to have the full benefit and use and enjoyment of Arlington's public rights-of-way in this area to access his credit union, pharmacy, veterinarian's office, and park where he would like to walk his dogs after their visits to the veterinarian's office.  However, because of the poor condition of the sidewalks in this area, Mr. Frame is unable to do so.

32.     Other destinations for Mr. Frame include the Bob Duncan Community Center and the Cliff Nelson Recreation Center where he votes.  The handicap accessible route at the front of the Cliff Nelson Recreation Center has an excessive running slope. The facility also has an insufficient number of handicap accessible parking spaces and lacks a van space.  The Bob Duncan Community Center also lacks a van accessible handicap parking space.

33.     On information and belief, Arlington has routinely failed to install curb ramps when resurfacing, repairing, altering, or constructing city streets, roads, and sidewalks or construct such curb ramps properly since the effective date of the ADA. Any recently repaved streets or roads in Arlington which lack curb ramps or contain noncompliant curb ramps are in violation of the ADA.

34.     On information and belief, many city streets, roads, and sidewalks have not been altered or repaired since the effective date of the ADA.  Many of these streets, roads, and sidewalks are inaccessible and unsafe for wheelchair users because they contain no curb ramps or noncompliant curb ramps.  These conditions are a result of Arlington's failure to properly develop and implement a Transition Plan as required by the ADA.

35.     On information and belief, Arlington has also received Federal financial assistance, subjecting it to the requirements of § 504 of the Rehabilitation Act. To that end, Arlington operates a federally funded paratransit service that requires occupants to execute a liability waiver absolving Arlington of any liability, even for the negligent acts of Arlington employees.  Mr. Frame would like to have the full benefit and

use and enjoyment of Arlington's paratransit service, but is unreasonably required to risk his safety to do so.

36.     Arlington has discriminated against the Plaintiffs simply because of their disabilities by denying him them the navigable use and benefit of sidewalks, streets, and intersections within Arlington.   Without accessible curb ramps and side walks, the Plaintiffs will be prevented from undertaking commonplace activities available to those who are fully ambulatory.   Arlington has also discriminated against the Plaintiffs by failing to provide sufficient handicap parking spaces at certain public facilities.

## COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiffs reallege each and every allegation contained in paragraphs 1 through 36 above as though fully restated below and further state as follows:

37.     Title II of the ADA prohibits a public entity from excluding persons with disabilities from participating in, or denying the benefits of, the goods, services, programs and activities of the entity or otherwise discriminating against persons on the basis of disability.  42 U.S.C. §12132.

38.     Pursuant to the mandates of 42 U.S.C.  § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA.  Those regulations are codified at 28 CFR Part 36, the ADA Accessibility Guidelines ("ADAAG").

39.     The regulations implementing Title II of the ADA, require that when a public entity alters any existing street, road, sidewalk or other facility in any manner that affects usability, the altered portions must be made accessible to and usable by individuals with disabilities 28 C.F.R. § 35.151(b).

40.    These regulations also require a public entity to install curb ramps at intersections whenever it alters sidewalks, streets, roads, and/or highways at anytime after January 26, 1992.  28 C.F.R. § 35.151(e)(1) & (2).

41.    When a public entity resurfaces streets, it affects the accessibility and usability of those streets and appurtenant sidewalks and is therefore an alteration within the meaning of the ADA.  However, Arlington has failed to provide proper curb ramps at several of these altered locations since the effective date of the ADA.  28 C.F.R. § 35.151(b).

42.    A public entity is also required to maintain the features of all facilities which are required to be accessible by the ADA.  28 C.F.R. § 35.133.  Facilities required to be accessible include any portions of buildings, roads, walks, passageways, parking lots, or other real property, including the site where the building is located. 28 C.F.R. § 35.104.

43.    Arlington's practices as set forth above, constitute unlawful and intentional discrimination on the basis of disability, in violation of Title II of the Americans with Disabilities Act 42 U.S.C. §12131 et seq., as follows:

        A.    Arlington's failure to properly install or maintain curb ramps when resurfacing streets and altering or installing city sidewalks;

        B.    Arlington's failure to install all necessary curb ramps when resurfacing streets and altering or installing city sidewalks;

        C.    Arlington's failure to maintain accessible pedestrian rights-of-way by failing to fix abrupt and impassable vertical changes in level, by failing to remove dangerous and excessive cross slopes, and by failing to remove



obstacles and protruding objects that narrow and restrict the path of travel;

D.    Arlington's failure to provide a sufficient number of handicap accessible parking spaces or fully compliant parking spaces at certain City buildings, property, or offices;

E.    Arlington's failure to correct architectural barriers to access on accessible routes and entrances to City buildings, property, or offices;

F.    Arlington's failure to properly implement a Transition Plan as required by the ADA and its implementing regulations.  28 C.F.R. § 35.150(d)(1); and

G.    Arlington's failure to implement as part of their Transition Plan, a prioritized schedule for installing curb ramps at existing pedestrian walkways, which have not been installed or altered since the effective date of the ADA, giving priority to walkways serving entities covered by the ADA, including State and local government offices and facilities; transportation, places of public accommodation, and employers, followed by walkways serving other areas.  28 C.F.R. § 35.150(d)(2).

44.    The Plaintiffs who use a motorized wheelchair have repeatedly tried to use public sidewalks, intersections, and streets in Arlington, only to encounter the barriers to access delineated above.

45.    As residents of Arlington, the Plaintiffs have experienced these barriers in the past and will continue to do so in the future as they frequently travel on Arlington's

sidewalks, streets, and intersections to various locations, including local restaurants, stores, hospitals, the post office and other government property, buildings, and/or offices.

46.    Arlington's discrimination against the Plaintiffs constitutes an ongoing and continuous violation of the ADA and unless restrained from doing so, Arlington will continue to violate the law.  Unless Arlington's unlawful conduct is enjoined, Plaintiffs will continue to sustain injuries for which they have no adequate remedy at law. Consequently, Plaintiffs are entitled to injunctive relief pursuant to the ADA, 42 U.S.C. § 12188.

47.    Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiffs are entitled to recover those attorney fees, expert fees, costs and expenses incurred in this case from Arlington.  28 C.F.R. § 35.175.

**WHEREFORE,** Plaintiffs demand judgment against Arlington and request that this Court enter an Order:

A.    Accepting jurisdiction of this case and declare that policies, procedures and services of Arlington are discriminatory and are not in compliance with the ADA;

B.    Requiring Arlington to alter its streets to comply with federal law and regulations to install curb ramps;

C.    Requiring Arlington to install curb ramps at any street intersection that was constructed, resurfaced, restored, and/or rehabilitated within Arlington since January 26, 1992;

D.    Requiring Arlington to alter their sidewalks to make them accessible to and usable by individuals with disabilities to the extent required by Title II of the ADA.

E.    Directing Arlington to evaluate and neutralize their policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Arlington to undertake and complete corrective procedures;

F.    Mandating that Arlington undertake a self-evaluation and that such evaluation contain a description of all Arlington streets, sidewalks, curbs, public parking, public restrooms, and entrances to government buildings with Arlington; a review of all policies and practices that govern the administration of Arlington's streets, sidewalks, curbs, public parking, and entrances to government buildings; and an analysis of whether the policies and practices regarding such administration adversely affect the full participation of and use by individuals with disabilities;

G.    Mandating Arlington to expeditiously make all reasonable and appropriate modifications in their policies, practices and procedures, remove all architectural barriers that are readily achievable, provide alternative means when necessary; and, otherwise, take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against in Arlington.

H.    Awarding reasonable attorney's fees, expert fees, costs, and expenses to the Plaintiffs;

I.    Awarding such other and further relief as the Court deems necessary, just and proper; and,

J.    Retaining jurisdiction of this case until Arlington has fully complied with the orders of this Court.

## COUNT II – VIOLATIONS OF THE REHABILITATION ACT

Plaintiffs reallege each and every allegation contained in paragraphs 1 through 36 above as though fully restated below and further state as follows:

48.    The Plaintiffs are individuals with disabilities.

49.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 prohibits discrimination against people with disabilities by recipients of federal funding. Section 504 provides that "no otherwise qualified handicapped individual...shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

50.    Plaintiffs, as City, County, and State residents who do or would like to frequent the businesses and facilities that are currently inaccessible are otherwise qualified to use the programs, services, and benefits provided by Arlington in the form of City sidewalks, curb ramps, streets, intersections, and handicap accessible parking spaces.

51.    Upon information and belief, Arlington has received Federal financial assistance so as to subject it to the requirement of § 504 of the Rehabilitation Act.

52.    Arlington has excluded the Plaintiffs, solely by reason of their disabilities, from participation in, denied the Plaintiffs the benefits of, and subjected the Plaintiffs to discrimination by failing to provide access to services, programs, and activities.

53.    Arlington is in violation of § 504 of the Rehabilitation Act by discriminating against the Plaintiffs and other disabled persons, as a result of the following violations:

A.    Arlington's failure to properly install or maintain curb ramps when resurfacing streets and altering or installing city sidewalks;

B.    Arlington's failure to install all necessary curb ramps when resurfacing streets and altering or installing city sidewalks;

C.    Arlington's failure to maintain accessible pedestrian rights-of-way by failing to fix abrupt and impassable vertical changes in level, by failing to remove dangerous and excessive cross slopes, and by failing to remove obstacles and protruding objects that narrow and restrict the path of travel;

D.    Arlington's failure to provide a sufficient number of handicap accessible parking spaces or fully compliant parking spaces at certain City buildings, property, or offices;

E.    Arlington's failure to correct architectural barriers to access on accessible routes and entrances to City buildings, property, or offices.

F.    Arlington's failure to properly implement a Transition Plan as required by the ADA and its implementing regulations.  28 C.F.R. § 35.150(d)(1); and



G.    Arlington's failure to implement as part of their Transition Plan, a prioritized schedule for installing curb ramps at existing pedestrian walkways, which have not been installed or altered since the effective date of the ADA, giving priority to walkways serving entities covered by the ADA, including State and local government offices and facilities; transportation, places of public accommodation, and employers, followed by walkways serving other areas.  28 C.F.R. § 35.150(d)(2).

54.    The Plaintiffs, who each use a motorized wheelchair, have repeatedly tried to use public sidewalks, intersections, and streets in Arlington, only to encounter barriers to access delineated above.

55.    Arlington has discriminated, and continues to so discriminate, against the Plaintiffs by denying them access to, and full and equal enjoyment of one or more of the goods, services, programs, facilities, privileges, advantages, and/or accommodations by failing to remove substantially all architectural barriers as required by Title II of the ADA, as a result of, *inter alia,* the violations, as expressed above.

**WHEREFORE**, Plaintiffs demand judgment against Arlington and request that this Court enter an Order:

A.    Accepting jurisdiction of this case and declare that policies, procedures and services of Arlington are discriminatory and are not in compliance with the Rehabilitation Act;

B.    Requiring Arlington to alter its streets to comply with federal law and regulations to install curb ramps;

**Complaint**                                                                                                          **Page 21**
H:\FILES\4500\45630001\PLEADINGS\Complaint.doc

C.    Requiring Arlington to install curb ramps at any street intersection that was constructed, resurfaced, restored, and/or rehabilitated within the City since January 26, 1992;

D.    Requiring Arlington to alter their sidewalks to make them accessible to and usable by individuals with disabilities to the extent required by the Rehabilitation Act.;

E.    Directing Arlington to evaluate and neutralize their policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Arlington to undertake and complete corrective procedures;

F.    Mandating that Arlington undertake a self-evaluation and that such evaluation contain a description of all the Arlington streets, sidewalks, curbs, public parking, public restrooms, and entrances to government buildings within Arlington; a review of all policies and practices that govern the administration of Arlington streets, sidewalks, curbs, public parking, and entrances to government buildings; and an analysis of whether the policies and practices regarding such administration adversely affect the full participation of and use by individuals with disabilities;

G.    Mandating Arlington to expeditiously make all reasonable and appropriate modifications in their policies, practices and procedures, remove all architectural barriers that are readily achievable, provide alternative means when necessary; and, otherwise, take all such steps as



are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against in Arlington;

H.    Awarding reasonable attorney's fees, expert fees, costs, and expenses to the plaintiffs;

I.    Awarding such other and further relief as the Court deems necessary, just and proper; and,

J.    Retaining jurisdiction of this case until Arlington has fully complied with the orders of this Court.

Respectfully submitted,

MOSELEY · MARTENS, LLP

By: _John L. Freeman, Esq._

John L. Freeman, Esq.
State Bar No.  07425500
John Mitchell Nevins, Esq.
State Bar No. 14935800

4949 Hedgcoxe Road, Suite 270
Plano, Texas 75024-3928
Telephone: (214) 525-3905
Facsimile:   (214) 387-9434

LEAD COUNSEL:

DE LA O & MARKO
Miguel M. de la O
Florida Bar No. 0822700
Charles D. Ferguson
Florida Bar No. 0741531
3001 S.W. 3rd Avenue
Miami, FL 33129
Tel:  305-285-2000
Fax:  305-285-5555
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Local Rule 3.1(f), the following persons may have a financial or other interest in the outcome of this lawsuit:  Richard Frame, Wendell Decker, and the City of Arlington.

_____
John Mitchell Nevins

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Richard Frame and Wendell Decker

2005 JUL 22 AM 10: 10
CLERK OF COURT

### DEFENDANTS
The City of Arlington, a municipal corporation

**(b)** County of Residence of First Listed Plaintiff    Tarrant
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U S PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John Mitchell Nevins, Moseley Martens, LLP, 4949 Hedgcoxe Road, Suite 270, Plano, Texas 75024 (214) 525 3905

Attorneys (If Known)

4-05CV-470-Y

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question (U S Government Not a Party)
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl Ret Inc | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☒ 446 Amer w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
Brief description of cause: 42 U.S.C. Section 12101 ADA violation - failure to maintain streets, sidewalks and parking lots

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C P 23

DEMAND $ N/A

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE    N/A
DOCKET NUMBER    N/A

DATE    07-22-2005

SIGNATURE OF ATTORNEY OF RECORD    John Mitchell Nevins

### FOR OFFICE USE ONLY
RECEIPT # 52387    AMOUNT 250.-    APPLYING IFP    JUDGE 3924    MAG JUDGE